Bonnie ALLEN, Appellant,

v.

Philip McCLENDON; Daryl Wilson; Howard Hansford; James Cothron; Kenneth Earl Hicks; James E. Slaughter; and Ralph Troxtell, Individually and in Their Capacities as Magistrates of the Pulaski Fiscal Court, Appellees.

No. 96–SC–1143–TG.

Supreme Court of Kentucky.

March 19, 1998.

Rehearing Denied June 18, 1998.

Samuel Ernest Begley, London, Elizabeth Ungar Natter, Lexington, for Appellant.

Frederick G. Neikirk, Jeffrey Scott Lawless, Somerset, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a summary judgment of the Pulaski Circuit Court which upheld pay increases voted by members of the Pulaski Fiscal Court from a level of $600.00 per month to $1,200.00 per month. This Court granted transfer of this case from the Court of Appeals in order to consider it with *Polston v. King,* 965 S.W.2d 143, which we also decide on this date in a separate opinion.

The principal issue is whether a fiscal court can vote its own members a pay in-

crease under the rubber dollar theory, thereby raising their own salaries during their term in office.

The lawsuit was originally filed by a non-profit corporation to challenge the increase in compensation. The corporation was dismissed as a party and numerous individuals were substituted as plaintiffs. The fiscal court magistrates were granted summary judgment approving the pay increase pursuant to the decision of the Court of Appeals in *Hasty v. Shepherd*, Ky.App., 620 S.W.2d 325 (1981). The circuit court determined that the plain meaning of Section 161 of the Kentucky Constitution and KRS 64.530 have been nullified by the combined effect of rulings by the Kentucky Court of Appeals and, consequently, the circuit court was bound by such precedent. This Court accepted transfer.

In 1993, all of the appellee magistrates were running for election to that office. Some were incumbent members of the fiscal court seeking reelection. All of the appellees were elected in the Fall of 1993 for a five-year term beginning January 1994. The salary established for the office of magistrate was $600.00 per month. On April 12, 1994, three months after taking office, the members of the fiscal court voted 6 to 1 in favor of increasing their salaries effective immediately. This lawsuit followed.

Section 161 of the Kentucky Constitution is very brief. It states:

> The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed.

Since the adoption of this section, courts have interpreted the provisions of Section 161 to permit a cost of living adjustment to be applied to the compensation received by local elected officials in order to recognize changes in the purchasing power of the dollar as understood by the drafters of the 1891 Constitution. On the view that such changes in economic conditions generally were not contemplated by either Section 161 or Section 246 of the Kentucky Constitution at the time of adoption, this theory permitted members of the General Assembly to raise salaries of elected officials in excess of the maximum permitted by law. *Matthews v. Allen*, Ky., 360 S.W.2d 135 (1962).

*Commonwealth v. Hesch*, Ky., 395 S.W.2d 362 (1965), extended the cost of living approach, sometimes referred to as the "rubber dollar theory" to permit a 30 percent increase which was equivalent to the increase of purchasing power from 1949 to 1964, when the legislature passed the increase. This applied to the salaries of elected county officials although it did not specifically include magistrates and county commissioners. *Hesch, supra*, allowed sitting county officials to benefit from the increase pursuant to a statute allowing such an increase notwithstanding the prohibition of Section 161 regarding changes in compensation during the term of elected officials.

*Hasty v. Shepherd*, Ky.App., 620 S.W.2d 325 (1981), authorized the magistrates of Bullitt County to increase their salary based on the Consumer Price Index during their terms, and considered both Section 161 of the Constitution and KRS 64.530. *Hasty, supra*, does not specify the amount of the increase permitted, and it does not stand for the proposition that an increase in salary during the term of sitting magistrates in excess of that allowed by the Consumer Price Index for the current year is permissible. The Consumer Price Index is an index of prices used to measure the change in the cost of basic goods and services in comparison with a fixed base period. Webster's II, *New Riverside Dictionary* (1984). There is nothing in *Hasty* that indicates that members of the fiscal court increased their fixed compensation by an amount exceeding the increase in the Consumer Price Index after their compensation had been fixed in the year of their election.

■ The cost of living adjustment or "rubber dollar" theory attributed to *Matthews, supra*, can be harmonized with a proper interpretation of KRS 64.527 and KRS 64.530. The cost of living index increase could be applied to the statutory maximum for salaries without violating the prohibition on

changing compensation during the term of an elected official. The annual changes based on the index authorized by those statutes reflects the change in purchasing power of the dollar and should not be labeled as an increase in compensation for purposes of the law.

The Kentucky General Assembly has established a specific statutory system relating to both cost of living increases and pay raises granted by fiscal courts to themselves. KRS 64.530 and KRS 64 .527. KRS 64.530 establishes limits on the timing of salary increases for magistrates and provides that no increase in compensation shall be effective during the term. KRS 64.527 requires that the Department for Local Government shall compute the rate of increase in the Consumer Price Index and the statutory maximum salary for county officials. The pay raise in question violates the plain meaning of KRS 64.530, which provides in § 4:

> In the case of county officers to be elected by popular vote ... the monthly compensation of the officer ... shall be fixed by the fiscal court ... not later than the first Monday in May in the year in which the officers are elected, and the compensation of the officers shall not be changed during the term ....

KRS 64.530(6) notes in pertinent part:

> But no change of compensation shall be effective as to any member of the fiscal court during his term of office.

The circuit court expressed the purpose of the legislation eloquently when it stated:

> The purpose of KRS 64.530(4) and (6) is self-evident. It makes sense to require as the statute purports to do, county officials running for reelection to set the salary for the next term of office prior to the election in which they are running .... The statute plainly requires that the salary be set before the voters make their decision.

As observed earlier, KRS 64.527 states, in pertinent part, that:

> The department for local government shall compute by the second Friday in February of every year, the annual increase or decrease in the consumer price index ... upon notification from the department for

local government, the appropriate governing body may set the annual compensation of the above elected officials at a rate no greater than that stipulated by the department for local government.

KRS 64.527 delegates the power of the General Assembly to set the amount of the maximum salary for county officials to the Department for Local Government under very specific guidelines as prescribed in the statutes. Such a delegation is permissible. KRS 64.530 recognizes that KRS 64.527 is the statute which provides for maximum compensation for county officers. It states that magistrates shall be paid "not to exceed the maximum compensation allowable under KRS 64.527." The authority of the Department for Local Government to identify a maximum salary is clearly part of the framework of the restrictions provided by KRS 64.520.

■■■ There is no conflict between the statutes. Even if there were such conflict, it is the responsibility of this Court to make an interpretation of the law that harmonizes the two, *Ledford v. Faulkner*, Ky., 661 S.W.2d 475 (1983), so as to give effect to both statutes. It is a rule of statutory construction that a statute should be construed so that no part of it is meaningless or ineffectual. *Brooks v. Meyers*, Ky., 279 S.W.2d 764 (1955). *See also Combs v. Hubb Coal Co.*, Ky., 934 S.W.2d 250 (1996).

■■■ In our view, the two statutes read together authorize the Department for Local Government to compute annually the statutory maximum salary. There are two ways a magistrate can receive that salary, 1) by the fiscal court fixing the compensation of magistrates in the year of the election, prior to the statutory deadline of the first Monday in May; or 2) through a cost of living increase.

■■■ In this case, the record does not support a finding that the increase was enacted pursuant to the application of the cost of living index theory. Only increases which are made consistent with the cost of living or rubber dollar theory are justifiable. *Cf. Carey v. Washington County Fiscal Court*, Ky. App., 575 S.W.2d 161 (1978), in which a coroner's salary was increased during his term

without applying the cost of living theory, violated Section 161 of the Constitution and KRS 64.530. Here there is nothing in the record to demonstrate that the magistrates invoked the cost of living or "rubber dollar" doctrine in raising their salaries.

It must be remembered that KRS 61.530 prohibits magistrates from changing their compensation after "the first Monday in May in the year in which the officers are elected." The argument presented by the magistrates that they should be allowed to recapture previously unused cost of living increases is a claim that is still subject to statutory interpretation. Clearly, magistrates can raise their salary if they operate within the statutory provisions and maximums outlined by the various laws already discussed. Theoretically, they could make an adjustment for unused cost of living increases. KRS 64 .530 only requires that they do so by the first Monday in May of the year of the election. The purpose of such legislation is to be fair. All candidates, both incumbents and challengers, must be on notice of what the salary is for the office for which they are running. It is not appropriate that a salary be increased after the election is concluded, so as to apply to the newly elected officials, whether they be incumbents or newly elected individuals.

The statutes of the Commonwealth are clear and unambiguous and they must be followed. Each local entity cannot have its own Consumer Price Index. The statutes require local governments to follow the directions of the Department for Local Government in specific detail. Such a delegation of authority is permissible under the mandates of *LRC v. Brown,* Ky., 664 S.W.2d 907 (1984).

It is the holding of this Court that the provisions of KRS 64.530(4) and (6) and KRS 64.527 can be read in harmony; that the intent of the General Assembly is that compensation may be set for a magistrate in the year of his or her election, not exceeding an amount equal to the purchasing power of the dollar in 1949 as measured by the Department for Local Government using the Consumer Price Index. During the term to which the magistrate has been elected, the compensation cannot be legally changed, but

may be adjusted annually by an amount equal to the increase or decrease of Consumer Price Index for the preceding year.

The judgment of circuit court is reversed and this matter is remanded to the circuit court for judgment in conformity herewith.

STEPHENS, C.J., and GRAVES, LAMBERT and STUMBO, JJ., concur.

COOPER, J., files a separate concurring opinion, in which JOHNSTONE, J., joins.

COOPER, Justice, concurring.

While I agree that the increased compensation which the Appellees voted to pay themselves cannot be justified as a "rubber dollar" adjustment, I disagree with that portion of the majority opinion which holds that the maximum "rubber dollar" adjustment allowable in any particular year must correlate with the increase in the consumer price index during the preceding year. Neither the language of KRS 64.527 nor the holdings of our previous cases support that conclusion.

Section 246 of the Constitution of Kentucky, as amended in 1949, provides:

No public officer ... shall receive as compensation per annum for official services ... any amount in excess of the following sums: Officers whose jurisdiction or duties are coextensive with the Commonwealth ... and Judges and Commissioners of the Court of Appeals, Twelve Thousand Dollars ($12,000); Circuit Judges, Eight Thousand Four Hundred Dollars ($8,400); and all other public officers, Seven Thousand Two Hundred Dollars ($7,200).

Section 161 of the Kentucky Constitution provides:

The compensation of any ... county ... officer shall not be changed after his election or appointment, or during his term in office ....

KRS 64.530(4) provides:

In the case of county officers elected by popular vote ... the monthly compensation of the officer ... shall be fixed by the fiscal court ... not later than the first Monday in May in the year in which the officers are elected, and the compensation

of the officer shall not be changed during the term . . . .

KRS 64.530(6) provides:

Justices of the peace [magistrates] serving on the fiscal court in any county . . . shall be paid for their services, out of the county treasury, not to exceed the maximum compensation allowable under KRS 64.527. The fiscal court shall fix the amount to be received within the above limit, but no change of compensation shall be effective as to any member of the fiscal court during his term of office.

In *Matthews v. Allen*, Ky., 360 S.W.2d 135 (1962) and *Commonwealth v. Hesch*, Ky., 395 S.W.2d 362 (1965), we held that the maximum compensations recited in section 246 of the Constitution meant the purchasing power of such compensation in 1949 dollars, and that the compensation could be adjusted upward in accordance with increases in the consumer price index in order to maintain that purchasing power, hence the "rubber dollar." We also held in *Hesch* that such adjustments were not "changes of compensation." Thus, those portions of KRS 64.530(4) and (6) which prohibit changes in compensation during the term of office do not apply to such adjustments. In *Hasty v. Shepherd*, Ky.App., 620 S.W.2d 325 (1981), the Court of Appeals specifically applied the "rubber dollar" principle to salary increases which county magistrates voted to themselves, and held that such adjustments did not constitute the "change of compensation" contemplated by KRS 64 .530(4) and (6). In response to *Matthews* and *Hesch*, the legislature enacted KRS 64.527, which provides:

In order to equate the compensation of . . . justices of the peace . . . with the purchasing power of the dollar, the Department of Local Government shall compute by the second Friday in February of every year the annual increase or decrease in the consumer price index of the preceding year by using 1949 as the base year in accordance with Section 246 of the Constitution of Kentucky which provides that the above elected officials shall be paid at a rate no greater than seven thousand two hundred dollars ($7,200) per annum. The Department of Local Government shall notify the appropriate governing bodies charged by law to fix the compensation of the above elected officials of the annual rate of compensation to which the elected officials are entitled pursuant to the increase or decrease in the consumer price index. Upon notification from the Department of Local Government, the appropriate governing body may set the annual compensation of the above elected officials at a rate no greater than that stipulated by the Department of Local Government.

Nothing in KRS 64.527 requires the cost-of-living adjustment allowable in any particular year to correlate with the percentage of increase in the consumer price index for the previous year. The statute only requires the Department of Local Government to notify appropriate governing bodies of the maximum annual rate of compensation based on the present value of $7,200 in 1949 dollars. In fact, the increase in *Matthews* was from $8,400 to $10,800 per annum; in *Hesch*, the increase was from $7,200 to $9,600 per annum; and in *Sarakatsannis v. Baker*, Ky., 488 S.W.2d 683 (1972), the increase was from $7,200 to $12,600 per annum. In all of those cases, the percentage of increased compensation exceeded the previous year's percentage of increase in the consumer price index. (The opinion in *Hasty v. Shepherd, supra*, does not state the amount of the increase awarded in that case.)

This does not mean that any magistrate's salary can be adjusted to the maximum computed under KRS 64.527 without application of KRS 64.530(4) and (6). It only means that a magistrate is entitled to cost-of-living adjustments necessary to make his or her present salary equate with the purchasing power of whatever the salary was for that office in 1949. If the 1949 salary was the maximum, $7,200, and has not been reduced in the interim, then the present holder of that office would be entitled to an adjustment to the maximum certified pursuant to KRS 64.527. But if the 1949 salary was, *e.g.*, $1,000 per annum, the present officeholder would be entitled not to an adjustment that would equate his or her present compensation with the 1949 purchasing power of $7,200, but to an adjustment that would equate that com-

pensation with the 1949 purchasing power of $1,000. Any increase in excess of that amount would be a "change of compensation" subject to the dictates of KRS 64.530(4) and (6).

Here, the maximum compensation certified pursuant to KRS 64.527 for 1994 was $44,047 per annum. OAG 94–7. Appellees increased their compensation from $7,200 to $14,400 per annum. However, the $7,200 per annum compensation had been in effect only since 1981. The 1949 salary for Pulaski County magistrates is not shown in this record, thus, there is no way to determine how much of an adjustment would be necessary in order to equate the purchasing power of their 1949 salary to 1994 dollars. Appellees had the burden of proof in that regard. *Carey v. Washington County Fiscal Court,* Ky.App., 575 S.W.2d 161 (1978). However, Appellees would be entitled to an adjustment which would equate the purchasing power of their 1981 salary to 1994 dollars.

Appellees concede in their brief that application of annual increases in the consumer price index to a 1981 salary of $7,200 per annum ($600 per month) would have permitted a cost-of-living adjustment in January 1994 of only $12,170.88 per annum ($1,014.24 per month). Thus, the increased compensation Appellees awarded to themselves retroactive to January 1, 1994 was not a "rubber dollar" adjustment pursuant to KRS 64.527, but a "change of compensation" awarded contrary to the dictates of KRS 64.530(4) and (6).

JOHNSTONE, J., joins this concurring opinion.